[Southern Building & Loan Association v. Casa Grande Stable Co.]

# Southern Building & Loan Association v. Casa Grand Stable Co.

*Bill for Cancellation of Mortgage and for Injunction.*

1. *Subscription for stock in building and loan association and loan of money on bond and mortgage, when one transaction; multifariousness.*—A subscription for stock in a building and loan association, upon which monthly instalments are to be paid until maturity, followed by a loan of money secured by the stock as well as by a bond and mortgage, providing for the payment of a fixed monthly premium of five per cent. on the loan, as well as five per cent. interest, for the use of the money, the stock to be subject to forfeiture, and the mortgage subject to foreclosure on default in the payment of premium and interest monthly, and providing that on the maturity of the stock it should be cancelled, meantime the borrower having no voice in the management of the association, is a single transaction for the loan of money at a greater than the lawful rate of interest; a bill to cancel the stock subscription and the bond and mortgage, is not multifarious.

2. *Contract of corporation, organized under general law, to pay usurious interest, ultra vires and void.*—A bond and mortgage, given by a corporation organized under the general statute, to secure a loan of money at a greater rate of interest than eight per cent. per annum, payable semi-annually, is *ultra vires* and void. (Code of 1886, §1664, subd. 7.)

3. *Repugnancy.*—A bill in equity seeking the cancellation of a bond and mortgage given for a loan of money because *ultra vires* and void, and at the same time praying for an accounting to ascertain the amount with interest that should be restored to the mortgagee, and offering to return such sum, and to do equity, is not repugnant, in that it attacks the mortgage as invalid, and seeks to redeem from it as valid.

APPEAL from Morgan Chancery Court.

Tried before Hon. WM. H. SIMPSON.

The averments of the bill in sections 5 and 6 as to the subscription for stock, and the bond and mortgage given to secure the loan, are as follows: "In July, 1889, W. G. Skillman, in the name of complainant, made application to the defendant for a loan of money, and in order to procure said loan was required to subscribe in com-

plainant's name for 70 shares of defendant's capital stock, and to agree to pay therefor at the rate of 35 cents per share per month, said payment being known as monthly instalments, and to pay 6 of these instalments before procuring any loan, which was done, on to-wit: August, 28, 1889, and 50 cents per share entrance fee. Another condition precedent to obtaining a loan which was complied with was to agree to pay a certain sum denominated "interest," which was to be computed at the rate of five per cent. per annum, on the nominal amount of the proposed loan, and to be paid in equal monthly instalments. Still another condition precedent to the obtaining of the desired loan was the requirement of an agreement on the part of the borrower to pay a certain sum each month which was fictitiously designated as a "premium" on the loan, and this last named sum was arbitrarily, uniformily, and without any bidding or other competition, fixed at the rate of five per cent. per annum, which said Skillman, in complainant's name and behalf, agreed to pay—as all would be borrowers of and from said association were required to pay, in equal monthly installments of $14.50, being 5 per cent. per annum of the amount of the alleged loan, without any bid for the right of taking precedence in taking a loan at a gross amount per share, or at a defined and precise sum for the entire period, and without any competition with any other shareholder, but the said premium was bid merely as matter of form, in pursuance of rule adopted by defendant to cover every case of borrowing, at the fixed unchanging rate of 5 per cent. per annum, which added to the sum denominated interest, aggregated 10 per cent. per annum on the face of the loan, paid monthly. Before any loan was made, defendant required said Skillman to sign, and he did sign, the name of the complainant by himself as complainant's president, a certain paper writing, in form a deed of mortgage, ostensibly conveying its aforesaid stable, and agreeing, among other things, in the complainant's name, to repay the proposed loan of $3,500.00 in six years from the date of said mortgage, to-wit: March, 8th, 1890, together with interest at 5 per cent. per annum, as well as the aforesaid fictitious "premium," and stipulating that if said Casa Grande Stable Company, an incorporation as aforesaid, shall well and truly pay

said sum of thirty-five hundred dollars so borrowed, as aforesaid, and evidenced by said bond, at the maturity thereof as herein stipulated, and shall also pay promptly on the 5th day of each month the instalments due on its shares until the amount in the loan fund to the credit of its shares from monthly payments and profits equal fifty dollars for each share on which said loan is made, and shall also promptly pay the monthly interest on said loan and the premium so bid by him monthly, and shall comply with the laws of said association, then this conveyance shall be null and void, otherwise to remain in full force and virtue"—"whatever all that may mean." The other averments of the bill, and the demurrers thereto, are shown in the opinion.

HARRIS & EYSTER, and LAWRENCE COOPER, for appellant, cited, *Williams v. Cooper*, 107 Ala. 246 (248) ; *Tatum v. Walker*, 77 Ala. 563 (566) ; *Globe Iron Co. v. Thacher*, 87 Ala. 458; *Caldwell v. King*, 76 Ala. 149 (154) ; *Micou v. Ashurst*, 55 Ala. 607.

E. W. GODBEY, *contra*.—The bill contends that the subscription of a livery stable corporation for stock in a building and loan association is illegal, *ultra vires*, and void; that the loan on terms of extortion, prohibited by Code, section 1664, made in connection with such stock subscription, was likewise *ultra vires* and void; that such illegal consideration of the bond and mortgage renders them void; and the material features of the transaction being illegal and void, the entire transaction is a nullity in every part; that not only has there been no ratification, but that there can not be, even by bill in chancery, nor can there be an estoppel; and that this bill was filed to annul the illegal transaction, pursuant to the duty enjoined upon the corporation by law. *Lanier v. Rees*, 103 Ala. 623; *Com. F. I. Co. v. Board of Rev.*, 99 Ala. 1; *F. Co. v. L. I. F. S.*, 28 Amer. Rep. 9; 4 Am. & Eng. Encyc. of Law, (2d Ed.), 1028, note 5, 1002, 1035; *Mcroney v. Ass'n.*, 21 S. E. Rep. 930; Endlich, §324; Wait, Void & Voidable Acts, §494; *F. &c. Bank v. S. Dist.*, 42 Pac. Rep. 767; *Pfister v. Mil. E. Co.*, 53 N. W. Rep. 27; 83 Wis. 86; *Hayden v. Davis*, 3 McLean, 276; Beach, Corp., §421; *Weed v. Snow*, 3 McLean, 265; *Davis v. Bank*, 4 *Ib.* 387; 2 Brandt, Suretyship 397; *Leh-*

12

[Southern Building & Loan Association v. Casa Grande Stable Co.]

*man v. Robinson,* 59 Ala. 219; *Ex parte John Hardy,* 68 Ala. 317; 4 Amer. & Eng. Encyc. of Law, (2d Ed.), 663, note 658; 3 *Ib.* 889; *Woods v. Armstrong,* 54 Ala. 150; *Seligson v. Lewis,* 57 Amer. Rep. 593, 600; *Carrington v. Caller,* 2 Stewart, 175; Wait, Void and Voidable Acts, 434; 101 U. S. 111; 21 Wall. 41; *Talmage v. Pell,* 7 N. Y. 328; *Pac. G. Co. v. Mullen,* 66 Ala. 582; *Wynne v. Wisenant,* 37 Ala. 46; *Gilliran v. Hargan,* 9 L. R. A. 110; *Westinghouse v. Wilkinson,* 79 Ala. 312; *Chambers v. Falkner,* 65 Ala. 448; *Chewacla v. Dismukes,* 87 Ala. 344; *Long v. G. P. R. R.,* 91 Ala. 521; *M. & C. R. R. Co. v. Grayson,* 88 Ala. 577; *Parkersberg v. Brown,* 106 U. S. 487. Any averments or prayer, ratifying or treating as voidable only, would render such aspect of the bill without equity, and demurrers for duplicity, repugnance, or multifariousness would not be well taken.—*Baker v. Mitchell,* (Ala.) 20 So. Rep. 40; Beach. Mod. Eq. Prac. §125. A specific prayer for improper relief would not render the entire bill demurrable.—3 Encyc. Plead. & Prac. 348; *Munford v. Pearce,* 70 Ala. 458; 1 Beach. Mod. Eq. Prac. §91; *George v. Central Banking Co.,* 101 Ala. 607; *Lyons v. McCurdy,* 90 Ala. 497; *Dickerson v. Winslow,* 97 Ala. 491. The averments of the additional facts in aid of the case made by the bill intensifies, without varying, the principle of relief claimed.—*Noble v. Moses,* 81 Ala. 548. The offer to do equity and to enter into an accounting, does not recognize the validity of the transaction.—*Ross v. N. E. M. I. Co.,* 101 Ala. 362; Morawetz, §721; 9 L. R. A. 695. The president could not bind the company in the premises, and his acts are wholly lacking in validity.—*Standifer v. Swann,* 78 Ala. 88; *T. & C. R. Co. v. E. A. R. Co.,* 73 Ala. 426; *Stanley v. S. I. & R. Co.,* 83 Ala. 260; *Alto. &c. Co. v. Alto. &c. Co.,* 21 Pac. Rep. 373; 78 Cal. 629; *Wait v. N. A. A.,* 14 L. R. A. 356; *Norton v. N. A. Bank,* 14 So. Rep. 872; *B. S. M. Co. v. Acme Mfg. Co.,* 153 Mass. 404; *Iron Wood Co. v. Harrison,* 42 N. W. Rep. 808. Independently of any question of *ultra vires,* the premium was illegal.—*McAuley v. Ass'n.,* 37 S. W. Rep. 212; 2 Am. & Eng. Encyc. of Law, 631; 35 L. R. A. 244, notes.

HEAD, J.—The Casa Grande Livery Stable Company, the complainant in this bill, is a private corporation organized under the general laws of Alabama for

the purpose of owning and operating a livery stable. It acquired ownership of a valuable brick stable, lot and building thereon, in Decatur, and therewith carried on the business for which it was organized. One Skillman was one of the corporators and stockholders.

The defendant, the Southern Building & Loan Association, is a private corporation organized under the general laws of Alabama providing for the organization of such institutions, for the purpose of carrying on the business indicated by its name.

The bill alleges that in March, 1888, Skillman, acting in the character of president of the Stable Company, and for and in the name of the company, applied to said B. & L. Association for a loan of $3,500, and in order to procure it was required to, and did subscribe for seventy shares of the association's capital stock in the name of the Stable Company, and to execute a bond and a mortgage on said stable property, in the name of the company, to secure the loan and interest thereon at the rate of five per cent. per annum. Without setting them out, in detail, the bill alleges, as a further part of the procurement and making of the loan, certain exactions on the part of the lender of the borrower, in the form of premiums on stock, etc., put into the writings between the parties, which, under the facts and intents charged in the bill, really constituted interest agreed to be paid for the loan, in addition to the nominal exaction of five per cent.; the aggregate of which exactions and agreements to pay, together with the nominal interest of five per cent., exceeded eight per cent. per annum of the loan, and it is alleged, in substance, that the forms adopted were designed as covers of usury.

It is further alleged that said Skillman acted throughout without the authority or knowledge of the directors or stockholders of the Stable Company, no meeting of either body having been called or held for that, or any other purpose, and that he acted under the mistaken belief that, as president of the company, he was authorized in the premises. Skillman received the money borrowed and applied it to such uses of the company as he saw proper. The company has returned to the association all the said sum of money received from it, with eight per cent. interest thereon, except $759, which it offered to return, but the association refused to accept

it, and it offers in its bill to pay the same, or to pay such sum as the court shall deem just and equitable; and submits itself to the jurisdiction of the court and agrees to do equity as the court may direct.

The relief specially prayed is that the subscription to said shares of stock, and the execution of the bond and mortgage be "each and all decreed usurious, *ultra vires* and void, and that the said stock and bond be cancelled and that a cancellation of the said mortgage be decreed; that an account be taken and the amount complainant should equitably restore to defendant be adjudged; that the defendant, its agents and attorneys be restrained and enjoined from proceeding with or making the said pending and threatened foreclosure sale"—the bill alleging certain pending proceedings for foreclosure of the mortgage by sale under the power. General relief is also prayed for.

The chancellor overruled the demurrers to the bill which raised only questions of multifariousness and repugnanccy.

The theory of the demurrer, in one aspect, is that the cancellation of the stock subscription as *ultra vires* and as an unauthorized and void act of the president, and the cancellation of the bond and mortgage given for the loan as also *ultra vires* and unauthorized, are distinct and independent equities incapable of joinder in the bill without offending the rule against multifariousness; and in another aspect, that the bill, in one phase, treats the bond and mortgage as *ultra vires* and void and seeks their cancellation, etc., and in another as valid obligations infected merely with usury, against which relief is sought, and seeks redemption, thus presenting inconsistent demands for relief.

In the first place, the averments of the bill, in detail, show that the entire dealing brought to view was a single transaction, all being for the effectuation of said loan at a greater than the lawful rate of interest. The stock was to be forfeited if the premiums and interest should not be promptly paid; the mortgage, were it valid, secured the payment of the monthly premiums as well the loan and five per cent. interest, and was forfeitable upon default in the payment thereof any month, and the supposed stock itself was security for the loan. If the stock should ever mature it was to be cancelled,

according to the bill, and all incidents of the supposed relation of stockholder, should cease. Meanwhile the company was without voice or vote as a stockholder in the management of the affairs of the association. The whole transaction, if the matters averred be true, was one of a loan of money, and its several parts were so blended into one as that the destruction of the bond and mortgage, for the causes specified in the bill, would carry with it destruction of the attempted stock subscription also, saying nothing of the undoubted want of corporate power to invest in stock of another corporation. We, therefore, do not see multifariousness in the effort the bill makes to procure express cancellation of the whole transaction.

With only the power to borrow money which was conferred upon the Stable Company by the general statute under which it was organized (Code, 1886, §1164, subd. 7), the bond and mortgage, in the present case, were clearly *ultra vires* and void. This statute expressly inhibits the borrowing of money by a corporation, so organized, at a greater rate of interest than eight per cent. payable semi-annually. The provision is not one of usury governed by the general usury law which forfeits the interest merely, but it is one going to corporate power to make the contract. If the present legal rate of interest in the State should be, by legislature, increased, this corporation would still remain as powerless to borrow money at a greater rate than eight per cent. payable semi-annually, as it is now. Again, the borrowing of money by the corporation is unauthorized unless by consent of the holders of the larger part in value of the capital stock expressed in the manner prescribed in said section of the Code. This provision being especially for the benefit of the stockholders, it may be that a loan obtained without this consent, if otherwise within corporate power, would be capable of ratification by the stockholders, (*Nelson v. Hubbard*, 96 Ala. 238; *Barrett & Co. v. Pollak*, 108 Ala. 390), but the bill shows no such ratification in this case.

So, it must be taken—indeed, it seems not to be disputed in the argument—that the bond and mortgage were and are void.

Is the bill repugnant, as the demurrers insist, because the securities are void and their cancellation sought,

while, at the same time, they are alleged to be valid and redemption sought? Does the bill, in any aspect, treat them as valid and seek redemption, within the true meaning and sense of redemption?

We have a line of decisions in cancellation suits, brought by individual mortgage borrowers, where cancellation of the mortgage was sought on account of total invalidity resulting from the violation of, or non-compliance with, some constitutional or statutory provision, in its execution, wherein we held that although the note and mortgage be void by reason of the Constitution or statute, yet if the complainant, seeking, in a court of chancery, to cancel them on that account, actually received money or thing of value from the mortgagee, in reliance by him upon the void securities, he would not be accorded relief, unless he offered in his bill to do equity by restoring to the mortgagee that which he had so received. We simply applied to him the old maxim that "he who seeks equity must do equity."—*American Freehold Land Mortgage Co. v. Sewell*, 92 Ala. 163; *New England Mortgage Security Co. v. Powell*, 97 Ala. 483; *Grider v. American Freehold Land Mortgage Co.*, 99 Ala. 281.

We do not now decide whether or not that principle is applicable to a case like the present, where the contract, if treated as one made by a corporation is void for the want of lawful power in the corporation (who is suing) to make it, or if made by the president without authority, as shown by this bill, is void for the want of his authority, as well as the want of corporate power; but it is evident from the frame of the bill in this case that what is said in reference to a restoration of the money received and applied by the president of the complainant, and the offers to do equity, in that respect were to bring the case within the saving of the principle, if the court should hold it applicable. We think the language of the bill, on this subject, clearly shows this. It nowhere commits the complainant to any recognition of the existence of a debt, but repudiates such existence throughout; and in speaking of moneys returned to defendant they are characterized as returns of moneys received, and not as payments of a debt; and the prayer is that the sum necessary to be *"restored,"* (not paid), be ascertained. The bill is clear, positive and emphatic

[Wood v. Wood.]

throughout that the bond and mortgage are void and should be cancelled, and such is its manifest theory and purpose.

The bill is not multifarious or repugnant, and the demurrers were properly overruled.

Affirmed.