[Southern Building & Loan Association v. Casa Grande Stable Co.]

of conversion.—*Bolling v. Kirby*, 90 Ala. 215, and cases there cited; s. c. 24 Am. St. Rep. 789, and notes 795, *et seq.; Central Railroad & Banking Co. v. Lampley*, 76 Ala. 357; *Strauss & Sons v. Schwab*, 104 Ala. 669; *Davis & Son v. Hurt*, 114 Ala. 146.

There was evidence going to show a demand for an l refusal to deliver possession in this case, and there was some evidence to the contrary. But the court in effect instructed the jury that such demand and refusal was not necessary to plaintiff's case, and refused requests of defendant for contrary instructions. This was error. The issue should have been submitted to the jury.

We think the court erred also in overruling defendant's objection to that part of Giesy's answer to the third interrogatory in these words: "Strictly speaking as I understand it there was no sale to the defendant." This was the opinion of the witness, and not being responsive to the interrogatory the objection was well made at the trial.

The judgment of the city court must be reversed. The cause is remanded.

·

# Southern Building & Loan Association v. Casa Grande Stable Co.

## *Bill in Equity to Cancel Mortgage.*

1. *Contract of corporation; must be entered into as authorized by the law of its incorporation.*—Where a corporation is organized under the general laws of the State which provided that it may borrow money and mortgage its property to secure the loan, but which further provided that such mortgage can not be made otherwise than by the consent of the holders of a large part in value of the capital stock expressed by a vote at a meeting of the stockholders called for che purpose, of the time and place of which meeting and of the purpose for which it is called, thirty days' notice shall be given each

stockholder, the execution of a mortgage by such corporation, to secure the loan, in any other way than that so prescribed by the statute, is *ultra vires*, and the mortgage so executed is void.

2. *Same; same; bill to cancel mortgage must offer to do equity.* Although a corporation executes a mortgage which is *ultra vires* and void, it can not maintain a bill in equity for the purpose of the cancellation of such mortgage, without offering to do equity by restoring to the mortgagee the amount remaining due thereon.

APPEAL from the Chancery Court of Morgan.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill in this case was filed by the appellee against the appellant.

It was averred in the bill that the complainant had negotiated a loan with the defendant, and for the purpose of securing the loan of the money, had subscribed for capital stock of the defendant association, had given its bond and executed a mortgage to secure the payment of the same, upon certain property owned by the complainant. That this loan was negotiated and consummated on the regular building and loan plan. It was further averred in the bill that the acts of the complainant in borrowing money were *ultra vires;* that the complainant was organized under the general incorporation laws of the State and had no authority to subscribe for the capital stock of another corporation; that the loan was made without the consent of the stockholders of the complainant corporation and without a meeting being held therefor as required by statute. It was also averred in the bill that by reason of alleged default in the payment of the installments due the defendant as required by the contract, the defendant was proceeding to foreclose said mortgage. In its bill the complainant offered to do equity by paying to the defendant such amount as might be ascertained to be legally due it.

The prayer of the bill was that the borrowing of the money and the transactions with the defendant on the part of the complainant be declared *ultra vires* and void; that the stock and bond be cancelled and

40

that the cancellation of the mortgage from the complainant to the defendant be decreed; that an account be taken and the amount complainant should equitably restore to the defendant be adjudged, and that the defendant, its agent and attorneys be restrained and enjoined from proceeding with and making the threatened foreclosure and sale. The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

Upon the final submission of the cause upon the pleadings and proof the chancellor decreed that the complainant was entitled to the relief prayed for, and ordered that upon the payment by the complainant to the defendant of the amount ascertained to be due it, that the stock and bond and the mortgage executed by the complainant to the defendant be delivered up and cancelled. From this decree the defendant appeals, and assigns the rendition thereof as error.

LAWRENCE COOPER and HARRIS & EYSTER and R. W. WALKER, for appellant.—There are several reasons why the complainant is not entitled to the relief he prays for in his bill. 1st. The question can not be made by The Casa-Grande Stable Company as a corporation. 2d. The stockholders in the company are estopped from denying the validity of the debt. 3d. The company and its stockholders are estopped from showing that the statutory formalities were not complied with. 4th. A mortgage executed without the formalities of the statute is not *ultra vires,* and the same is, therefore, not void because of failure to hold the statutory meeting, authorizing the execution of the mortgage.—*Bank v. Matthews,* 98 U. S. 621; *Fritts v. Palmer,* 132 U. S. 282; 5 Thompson's Com., §§ 5978, 6016, 6032; *Denver F. Ins. Co. v. McClelland,* 59 Am. St. Rep. 134.

It is now very well settled that a corporation cannot avail itself of the defense of the *ultra vires* when the contract has been, in good faith, fully performed by the other party, and the corporation has had the full benefit of the performance and of the contract. If an action cannot be brought directly upon the agreement,

either equity will grant relief or an action in some other form will prevail. The same rule holds *e converso.* If the other party has had the benefit of a contract fully performed by the corporation, he will not be heard to object that the contract and performance were not within the legitimate powers of the corporation. *The Whitney Arms Company v. Barlow,* 20 Am. St Rep. 506. See also *Linkauf v. Lombard,* 33 Am. St. Rep. 743 and note; Jones on Corporate Bonds, § 24; *Sioux City Co. v. Trust Co.,* 173 U. S. 99; *National Bank v. Matthews,* 98 U. S. 621. Such a provision is regarded as intended for the protection and security of the stockholders; and in the absence of fraud and objection upon their part, defects in the proceedings by which the assent is given cannot be made to invalidate the mortgage unless they are of such a substantial character that the giving of the assent canot be inferred.—2 Cook on Stock and Stockholders (3d ed.), p. 1264. See *Rochester Sav. Bank v. Averell,* 96 N. Y. 467; *Bowman et al. v. Foster & Logan Hdwre Co.,* 94 Fed. Rep 592.

The view generally accepted by other courts which have had occasion to determine the effect of similar provisions for notice to stockholders of a proposed in-increase of stock or bonded indebtedness, is that the only object of the prescribed notice is to inform the shareholders ,and to afford them the opportuity of protecting their interests.—*Nelson v. Hubbard,* 96 Ala. 238; *Kadisha v. Garden City Assn.,* 38 N. E. Rep. 236, 42 Am. St. Rep. 256; *Blue Rapids Co. v. Mercantile Co.,* 53 Pac. Rep. 761; *Chewacla Lime Works v. Dismukes,* 87 Ala. 344; *Sherwood v. Alvis,* 83 Ala. 115; *Hitchcock v. Galveston,* 96 U. S. Rep. 341; *Long v. Ga. Pac. R. Co.,* 91 Ala. 519; *Marion Sav. Bank v. Dunkin,* 54 Ala. 491.

E. W. GODBEY, *contra.*—The transaction was *ultra vires* even the association which had power to issue shares only to members, and only natural persons could become members.—Code, § 1556; Endlich on B. & L. Associations, §§ 314, 315; *Anderson v. Cleburne*

*B. & L. Asso.*, 16 S. W. Rep. 298; *Nat. I. Co. v. Nat. B. & L. Asso.*, 49 Minn. 517.

There was no ratification by the association's stockholders. The corporation is powerless to ratify.—*M. & C. R. R. Co. v. Grayson*, 88 Ala. 577; *Long v. Ga. Pac. R. Co.*, 91 Ala. 519; *C. R. & B. Co. v. Smith*, 76 Ala. 572. Ultra vires acts can not be ratified by stockholders so as to bind the corporation.—*Day v. S. B. Co.*, 58 Am. St. Rep. 352; *Steiner v. Steiner L. & L. Co.*, 120 Ala. 128; *Westinghouse v. Wilkinson*, 79 Ala. 312; 12 Am. & Eng. Ency. of Law, 587-8; 7 Am. & Eng. Ency. of Law (2d ed.), 698; *Miller v. Am. Mut. A. Co.*, 20 L. R. A. 765; *Webster v. Home Mch. Co.*, 54 Conn. 394; *McCutchen v. Mertz Capsule Co.*, 31 L. R. A. 415; *Drake v. Markham*, 18 Am. St. Rep. 889; *Bank v. Hawkins*, 19 Sup. Ct. Rep. 739.

The absence of any notice to the majority stockholder or his administrator of the details of the onerous burden, evidenced by the note, bond, mortgage, etc., the lack of notice to the stockholders, other than Skillman and Hedges, that the stable company was a nominal stockholder in the association, shows a lack of that "knowledge of what was done, and how done, that is an indispensable prequisite to a binding ratification." *Huntsville, etc., R. Co. v. Corpening*, 97 Ala. 681; *Brown v. Bamberger*, 110 Ala. 342; *Trufant v. Hudson*, 99 Ala. 526; *Koloff v. St. Paul*, 48 Minn. 215; *Chicago v. Cameron*, 120 Ill. 448.

HARALSON, J.—The bill attacks the validity of the bond and mortgage of the complainant company on several grounds, viz.: that they were given to secure a loan to said company at a greater rate of interest than 8 per cent per annum, and, under the statute under which said company was organized (Code, 1886, § 1664 subdiv. 7), said bond and mortgage were *ultra vires* and void; that said Stable Company is a corporation organized under the general laws of the State, having only the powers and authority conferred by statute, and that no power is given to it by statute, to subscribe for the stock of another corporation, and

that, said stable company was without power to execute the mortgage, without the consent of the holders of the larger part in value of the capital stock of said company, expressed by a vote at a meeting of the stockholders, called for that purpose, according to the requirements of said section 1664 of the Code of 1886.

To the bill as originally filed, a demurrer was interposed by the defendant corporation, and the same was overruled. On appeal to this court, the decree was affirmed, and the equities of the bill, on the averments as made, were sustained.—*S. B. & L. Asso. v. Casa Grande Stable Co.*, 119 Ala. 175.

The question of usury as presented in the evidence introduced on the trial of the cause, is quite different from that presented on the face of the bill. We deem it unnecessary to pass on the question of usury, as it is now presented on the facts, since it is not necessary for the determination of the cause in the view we take of it in another of its aspects. We refer, as touching the question, to *Southern B. & L. Asso. v. Anniston Loan & Trust Co.*, 101 Ala. 582, and *Sheldon v. B. B. & L. Asso.*, 121 Ala. 278; *Johnson v. S. B. & L. Asso.*, 121 Ala. 524; *National B. & L. Asso. v. Ballard*, 125 Ala. 155.

It is conceded that one corporation cannot, in the absence of express statutory authority become an incorporator by subscribing for the capital stock of a new corporation, or invest its capital stock in the capital stock of another corporation.—*Lanier L. Co. v. Reese*, 103 Ala. 622; *Com. F. Ins. Co. v. Board of Revenue*, 99 Ala. 1. But, it is contended with plausibility, that this principle has no application to a transaction with a building and loan association already organized and operating, where a borrower is required by its rules and regulations to subscribe for certain shares of its stock,—a device, peculiar to such institutions, upon which loans are alone effected. As bearing on the question we refer to Endlich on B. & L. Asso., 282, 321; Thompson on B. & L. Asso. (2d ed.), 215, § 114. As the point is unnecessary to the decision of the cause we express no opinion on it.

The section of the Code of 1886 above referred to, under which the complainant corporation was organized, and which is the law of its existence, provides that the corporation may borrow money at a rate not exceeding 8 per cent per annum, and mortgage, convey or pledge its property to secure the loan; but it provides, that such mortgage, conveyance, or pledge, must not be made otherwise than by the consent of the holders of the larger part in value of the capital stock, expressed by a vote at a meeting of the stockholders, called for the purpose, of the time and place of which meeting, and of the purpose for which it is called, thirty days' notice shall be given each stockholder personally, whose residence is known, and by the publication for four consecutive weeks in the newspaper published nearest to the place of business of the corporation.

When this cause was here on its former appeal, it was held that the borrowing of money by this corporation was unauthorized unless it was done by the consent of the holders of the larger part in value of the capital stock expressed in the manner prescribed in said section of the Code, which was enacted for the protection of stockholders.—*So. B. & L. Asso. v. Casa Grande Stable Co.*, 119 Ala. 181; *Nelson v. Hubbard,* 96 Ala. 238, 253; *Barrett v. Pollak*, 108 Ala. 390. It is also well understood that the doctrine of estoppel cannot be invoked by the defendant to bar the right of the corporation itself or of any of its stockholders to raise the question of its own *ultra vires* and void act, against the enforcement of the loan by the lender.—*C. R. & B. Co. v. Smith*, 76 Ala. 572, 581; *Westinghouse Machine Co. v. Wilkinson*, 79 Ala. 312, 314; *Steiner v. Steiner L. & L. Co.*, 120 Ala. 128.

In this case, the complainant received from the defendant, as a loan the sum of $3,500, a large part of which it used in removing a prior mortgage on the property embraced in defendant's mortgage, and it appears it received the full benefit of the loan. The evidence fully established the fact, and it is undisputed, that said loan was applied for to the defendant, by two of the stockholders of the Stable Company, who

owned less than one-half of the stock in said company, and was effected, and the mortgage given by them in the name of the company on its property, to secure the same, without the knowledge, consent or authority of the other stockholders, and without a meeting of stockholders called for the purpose, as required by the statute. The loan was, therefore, as was held on the former appeal, entirely unauthorized as against the company and its shareholders. It would, however, be manifestly inequitable, as is well settled in equity practice, for the complainant to come into a court of equity to avail itself of the invalidity of its mortgage to secure this loan, without offering to do equity by restoring to defendant the amount remaining due thereon.—*A. F. L. M. Co. v. Sewell*, 95 Ala. 163; *N. E. S. Co. v. Powell*, 97 Ala. 483; *Grider v. A. F. L. M. Co.*, 99 Ala. 281; *Giddens v. Bolling*, 99 Ala. 319.

The complainant, apprehending the force and necessity of this principle to the maintenance of its bill, offered to do equity, and to restore to the defendant the full amount of said loan, less the amounts that had been returned to the defendant. The court very correctly held the complainant to this offer, and proceeded from data furnished by the evidence, to ascertain for itself this balance remaining unpaid on said loan, and found it, at the date of the decree, to be the sum of $892.92, upon the payment of which, it was ordered that the bond and mortgage of the complainant to the defendant be cancelled and held for naught.

We find no error in the decree of the court, and it is affirmed.

Affirmed.

The court below in the decree rendered in this cause, which was affirmed at a former day of the term, held that defendant's cross-bill was without equity and dismissed the same. It also decreed that the said bond and mortgage of complainant to defendant, described in the pleadings, were null and void. The decree also ascertained the mortgage indebtedness from complainant to defendant.

It now, upon further consideration of the cause, ap-

pears that said decree, in declaring said bond and mort-
gage null and void was erroneous, since complainant is
not entitled to that relief, until it has performed the
equity offered in its bill, viz., to pay back to defend-
ant the money it received with interest,—and failing
this, it would be entitled to no relief at all in the case,
and it further appears that to do complete justice be-
tween the parties, said decree needs modification and
extension of provision. To these ends, it is hereby or-
dered, adjudged and decreed, that the affirmance of
said decree by this court at a former day of the term
be, and the same is hereby set aside; and the court
proceeding to render and direct the decree that should
have been rendered by the lower court, doth order, ad-
judge and decree that the cross-bill of the defendant is
without equity, and that the same be and it is hereby
dismissed; that the amount of ($892.92) eight hundred
and ninety-two and 92-100 dollars, as ascertained by
the court below to be due and owing by complainant
to defendant, on the 28th October, 1899, is the correct
amound so due and owing. It is further ordered and
decreed, that said sum be paid by complainant to de-
fendant, or its attorneys of record, or to the register
of the court, on or by the first (1st) day of August,
1901, with the interest thereon from the 28th day of
October, 1899, and failing to make such payment by
that date, the chancery court shall peremptorily dis-
miss said bill out of court; but if complainant shall
well and truly pay said sum as above ordered, on or
by the day named, then, and in that event, the chan-
cery court shall enter a decree holding and declaring
said bond and mortgage to be void, and ordering the
same to be delivered up and cancelled, and so marked
on the record of the same in the probate office of Mor-
gan county. It is further ordered that complainant
and defendant pay, each, one-half of the costs of the
appeal.

Reversed, rendered in part and remanded.