## In re MAYO CONTRACTING CO.

### (District Court, D. Massachusetts. May 20, 1907.)

### No. 11,271.

1. BANKRUPTCY—PREFERENCES—PAYMENT TO CREDITOR.

   A payment made by an insolvent corporation to a creditor within four months prior to its bankruptcy is no less a preference under Bankr. Act July 1, 1898, c. 541, § 60a, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1907, p. 1031], because some other creditors may also have obtained larger payments in proportion to their claims during such period.

2. SAME.

   The fact that a bankrupt was insolvent at the time it entered into a contract, and that through such contract it obtained property on credit from time to time prior to its bankruptcy, does not prevent a partial payment made by it on such property within four months prior to its bankruptcy from being a preference, where no more property was furnished by the creditor after such payment.

3. SAME—PROVABLE CLAIMS—SURRENDER OF PREFERENCE.

   Where, at the time a consent decree in favor of a creditor was entered against a corporation within four months of its bankruptcy, the books of the corporation showed it to be insolvent, and a statement therefrom made by an accountant showing such fact was examined by counsel for both parties, a payment obtained by the creditor through such decree was received with reasonable cause to believe that a preference was intended, as the fact was, and the creditor cannot prove the remainder of his claim against the estate in bankruptcy without surrendering such payment as required by Bankr. Act July 1, 1898, c. 541, § 57g, 30 Stat. 560 [U. S.

Comp. St. 1901, p. 3443], as amended by Act Feb. 5, 1903, c. 487, § 12, 32 Stat. 799 [U. S. Comp. St. Supp. 1907, p. 1030].

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 255–257, 497–499.]

4. SAME.

Where a creditor of a bankrupt had two claims against it, arising out of different contracts, but both were due and could have been joined in the same action, at the time he received a voidable preferential payment upon one, he cannot prove the indebtedness on either claim without surrounding such preference.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 497–499.]

In Bankruptcy. On petition for review of order of referee disallowing claims of William A. Norton.

Torrance Parker, for trustee.

Fred L. Norton, for creditor.

DODGE, District Judge. The petitioner sought to prove two claims against this estate. One was for a balance of account amounting to $2,131.18. The account began in June, 1902. The bankrupt was charged in it for piles supplied and teaming done at various dates between June, 1902, and August, 1905, in all $18,349.40. It was credited with piling returned and various payments by check on account; the last being November 13, 1905, amounting in all to $16,218.22. The other claim offered for proof was also for piles supplied to the bankrupt; but the piles included in this claim were all furnished under a written agreement with the bankrupt dated May 13, 1905, whereby the creditor undertook to furnish 11,500 piles, as the bankrupt should require them, for use in certain work wherein it was engaged at the Arlington Mills in Lawrence, Mass., under a contract with the Benjamin F. Smith Company, not to exceed a certain number in any one month, and the bankrupt undertook to pay for all piles so furnished in monthly installments amounting to a fixed percentage of the amount due for the previous month's supply, the balance to be paid 60 days after all the piles should have been delivered.

In November, 1905, the bankrupt failed to pay the installment then due according to this contract. In December it was still further in arrears, whereupon the litigation began which is described in the referee's report. The bill in equity brought by the petitioner on January 5, 1906, set forth the bankrupt's indebtedness to him under the contract of May 13, 1905, and sought to reach and apply to the payment of that indebtedness moneys due the bankrupt from the B. F. Smith Company under its contract with the bankrupt for the Arlington Mills work. The bankrupt and all other parties to this suit agreed to the entry of the interlocutory decree entered January 12, 1906, and described in the referee's report. In accordance with the terms of this decree, it received $2,000 from the B. F. Smith Company on that day, or the day after in the form of a draft, and on the same day transferred it to the petitioner. By this payment to the petitioner, the amount due it from the bankrupt under the contract of May 13th was reduced from $6,597.43 to $4,597.43. Less than four months later, viz., on April 11, 1906, the petition was filed under which it has been adjudi-

cated bankrupt. The referee disallows both claims, unless the $2,000 be surrendered.

The evidence before the referee fully supports his finding that the bankrupt was insolvent on January 12, 1906. This finding is not seriously disputed.

The surrender of the $2,000 draft to the petitioner on that day was a transfer to him of $2,000 out of the property then belonging to the bankrupt. The decree of the state court, in obedience to which the transfer was made, was consented to by the bankrupt's solicitor, acting under the bankrupt's instructions. No room for doubt is left upon this point by the evidence, and the referee's conclusion that the bankrupt "suffered" the decree to be entered against itself in the petitioner's favor is therefore fully supported.

By the transfer thus made, the petitioner obtained $2,000 out of the bankrupt estate, on account of what was due to him, within four months preceding the bankruptcy; the estate being at the time insufficient to pay all the bankrupt's debts in full. The natural conclusion is the one adopted by the referee—that the effect of the transfer was to enable the petitioner to obtain a greater percentage of its debt than any other of the bankrupt's creditors of the same class. Two reasons only are suggested why that conclusion ought not to be drawn under the circumstances of this case. The evidence is claimed to show (1) that payments on account were made, within the four months, to other creditors of amounts larger in proportion to their claims, as those claims stood at the beginning of the four months, than was the $2,000 which went to this creditor in proportion to his claim, as that claim stood at the beginning of the four months; and also to show (2) that the bankrupt's insolvency, if it existed as above found, dated from May 13, 1905, and that the net result of all transactions between the petitioner and the bankrupt, whether those only which were within the four months or all the transactions since May 13, 1905, the above transfer of $2,000 included, was to increase the bankrupt's indebtedness to the petitioner and the bankrupt's estate as well.

I am unable to regard either reason as a sufficient objection. As to (1), if there is any other creditor of the same class who, by the enforcement of the transfer in question, will obtain a less percentage of his debt than the petitioner, I think that the transfer was a preference under section 60a of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], as amended Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1907, p. 1031]), and that it was none the less a preference, even though it be true that some creditors can be found who have received larger percentages through other payments made to them within the four months. If, as was the case here, the bankrupt was insolvent during the entire period of four months, all such payments were also preferences within the definition of section 60a, so far as appears from anything in the evidence concerning them. As to (2) I am unable, in view of the evidence, to regard this transfer as in any way similar to a payment upon a running account thereby kept alive through the extension of new credit. I do not see how it can be said to have had the effect of increasing the bankrupt's estate. The petitioner did not furnish or advance anything more

to the bankrupt after the transfer was made. He had not furnished or advanced anything to the bankrupt since November 14, 1905.

The referee was therefore right in holding that the effect of the transfer was to enable the petitioner to obtain a greater percentage of his debt than other creditors of the same class. It is contended, however, that he was not justified in finding that the bankrupt intended a preference by the transfer, or that the petitioner had reasonable cause to believe that a preference was intended. There can be no question that the bankrupt was insolvent at the time of the transfer. It seems to me equally unquestionable on the evidence that the bankrupt knew itself to be insolvent at the same time. But to make the transfer such a preference as is voidable under section 60b, and therefore a preference which must be surrendered in order to obtain the allowance of the creditor's claim under section 57g, a preference must have been actually intended in fact on the debtor's part, or there must have existed what the law regards as the equivalent of such an actual intent on his part, and such an intent is not to be conclusively presumed from the mere fact that the debtor knows himself to be insolvent according to the definition in the bankruptcy act. Hardy v. Gray (Re Andrews), 144 Fed. 922, 75 C. C. A. 562.

The bankrupt was not only technically insolvent on January 12, 1906; but, on the evidence, it might fairly be called hopelessly insolvent at that time. The extent to which its aggregate property at a fair valuation fell short of the amount necessary to pay its debts depended mainly on the valuation at which its plant was to be taken. This was carried on its books at $14,912, being its cost less some allowance for depreciation. Its president testified that the plant was worth at most 60 per cent. of that amount, or $8,947.20, which he thought would be its value "to a going concern, to a person that has use for it." Taking it at that figure, the total assets still showed a formidable deficiency as compared with the total liabilities. In the bankruptcy proceedings begun in the following April this same plant was appraised at not quite $4,000, and was sold for a little over $2,000.

The bankrupt had actual knowledge, not merely of the fact that its property did not come up to the amount of its liabilities in value, but also of the fact that its liabilities were in amount very considerably greater than its property. As to this there can be no question. Not only was its financial condition fully disclosed upon the books kept by it, but that condition, in all its details, was made the subject of careful scrutiny by the bankrupt's officers and its counsel during the negotiations with the petitioner to which the referee refers and which resulted in the entry of the decree. The statement drawn from the books by a professional accountant, mentioned in the report, was before them. The bankrupt's officers and its counsel well knew that it had become deeply involved, as the referee finds it to have been, and that only the forbearance of its creditors in granting extensions enabled it to keep on with its contract work. They may, indeed, have allowed themselves to hope that further continuance of its work might ultimately enable it to meet its liabilities; but to hold that they did not intend, by a payment so far out of the usual course of business as the transfer here in question, to prefer the creditor who received it, would

be to hold that they did not intend the transfer to have that result at the time it was made which a reasonable man having their knowledge must have anticipated from it. No such finding would in my opinion be warranted by the evidence before the referee.

What the petitioner had ascertained for himself before he took any legal proceedings against the bankrupt was enough to put him on inquiry as to the bankrupt's solvency, and enough, also, to give him sufficient reason to suspect that it might be insolvent. In the course of the various conferences which followed with the bankrupt's officers and counsel he became chargeable, as it seems to me, with substantially the same knowledge of the bankrupt's financial condition which they possessed. I agree with the referee in the finding, from the evidence, that the statement prepared by the accountant from the bankrupt's books was shown to and examined by the petitioner's counsel. At any rate, he had the opportunity of seeing and examining it. Both parties, therefore, acted in view of the undeniable fact that the bankrupt was deeply involved, and in such a condition that its bankruptcy was probable, and the same circumstances which I have regarded as establishing intent to prefer on the debtor's part I must regard as establishing reasonable cause to believe that to be the debtor's intent on the part of the creditor.

The petitioner contends that his two claims are distinct and independent, and that in any case, whether the $2,000 be surrendered or not, his claim of $2,131.18, which did not arise under the contract of May 13, 1905, and was not included in his suit in equity wherein the decree of January 12, 1906, was entered, ought to be allowed. I do not think the two claims can be considered distinct and independent in such a sense as to require this result. Both were due at the time of the preference. The suit in equity might have been brought upon both as well as upon one only. The only difference between them in the nature of the indebtedness claimed is that one claim arose under an implied contract, the other under an express contract. Both might have been included in one and the same proof of claim.

The order of the referee is affirmed.