### Citizens Insurance Company v. Oscar Helbig.

1. INSURANCE—*effect of verified plea denying execution of policy.* The interposition of a verified plea of the general issue casts upon the plaintiff the burden of proving the execution, delivery and acceptance of the policy sued on and that the same was in force at the time of the loss in question.

2. INSURANCE—*effect of effort to cancel.* An effort to cancel a policy of insurance is an implied recognition of the existence and enforcibility of the policy.

3. EVIDENCE—*effect of legal presumptions.* Legal presumptions do not, strictly speaking, shift the burden of proof. The only effect of legal presumptions is to create the necessity of evidence to meet the *prima facie* case thereby created, and which would otherwise prevail.

Assumpsit. Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the May term, 1907. Affirmed. Opinion filed December 23, 1907.

BARRY & MORRISSEY, for appellant.

PEIRCE & PEIRCE, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in *assumpsit* based upon an insurance policy purporting to have been issued by the appellant company to appellee for the sum of $1,500 and covering certain furniture and fixtures located in the Phoenix Hotel at Bloomington which was destroyed by fire on June 19, 1900. The declaration sets out the policy *in haec verba*. The cause is before this court for the third time. Upon the first appeal a judgment in favor of appellant was reversed. Helbig v. Citizens Ins. Co., 108 Ill. App. 624. The cause was again tried and a judgment rendered in favor of appellant, which judgment also was reversed. Helbig v. Citizens Ins. Co., 120 Ill. App. 58. On the last trial the jury returned a verdict in favor of appellee for the sum of $1,959.58, upon which judgment was rendered.

In the opinion of this court rendered upon the second appeal it was held that the only issue involved under the pleadings was whether the policy ever became an executed binding contract between the parties; in other words whether or not appellant delivered and appellee accepted the policy. It was further held that this issue could only be raised by a verified plea. Prior to the last trial the defendant verified its plea of the general issue theretofore filed. One of the grounds urged by appellant for reversal is that the verdict is manifestly against the weight of the evidence. The views hereinafter expressed render it unnecessary to consider the remaining errors assigned.

The interposition of the verified plea of the general issue cast upon appellee the burden of proving the execution, delivery and acceptance of the policy and that the same was in force at the time of the fire. The evidence established the issue and delivery. Upon the question of acceptance the evidence is substantially as follows:

Appellee testified that the policy in question was the last of four, written for him by the same agent in the appellant company. That the first was issued about the middle of the year 1898, on the same property, and for the same amount, rate and time as the last and expired by its own limitation. That the second was for $2,500, on the hotel building, issued about the first of the year 1899, for three years; that appellee was unable to find this second policy after the fire, and did not know what became of it, but that it was paid by appellant, through its agent Mantle. That the third policy was issued at the expiration of the first, insuring the same furniture and fixtures for the same amount, rate and time, but that appellant refused to accept the risk at one per cent. rate, because of a board partition in one of the walls of the building, and cancelled it a few days after it was issued, by written notice served on appellee; that the cancelled policy was surrendered to the agent, who read appellee a letter from the company offering to accept the risk at an increased rate of 1 ½ per cent.; and that thereafter appellee ordered the policy in question, which the agent wrote and brought and gave to appellee at his store; and that appellee took the policy and put it in his safe in the store, and then and there paid the agent the premium of $15 in cash. In this appellee was corroborated by his daughter, who testified that she was present and saw the agent deliver the policy to appellee, and saw appellee take money from the till and pay it to the agent; and also by the agent's account for the month of August, 1899 (Exhibit B—3,), returned to the company October 4, 1899,

and wherein the agent charges himself with receipt of the premium. The policy is countersigned by A. Mantle, agent, and recites that "The Citizens Insurance Company of Missouri, in consideration of the stipulations herein named and of Fifteen Dollars, does insure Oscar Helbig," etc., was then offered in evidence. Appellee further testified the policy remained in his safe until after the fire; that the building was destroyed and the safe fell into the basement and was not taken from the debris until six or seven days after the fire, and appellee did not succeed in getting it open until the thirteenth day after the fire, and that before the safe was opened, he went to see the agent about the condition of his insurance.

The evidence offered by appellant tends to establish the following facts: That on the morning of the fire appellee went to the home of appellant's agent, Mantle, who was confined to his room by illness, and sought to have said agent do some "fixing" so that appellee might be able to collect the policy; that the agent replied that it had been cancelled for non-payment of premiums and exhibited to appellee the policy register which showed that such was the fact. That appellee then said that Mantle could fix it if he wanted to, to which Mantle replied that he would not do it for the amount of the policy. That shortly thereafter appellee told one August Boeker that the company would not recognize the policy in question, that he was not on good terms with the agent, and requested Boeker to take the policy to the agent, and see if he could make a settlement. That Boeker returned after seeing the agent and told appellee that the agent had said that the premiums on the policy had never been paid, and that the policy had been cancelled. That appellee replied that Mantle owed him more than the premium amounted to, that he owed him for a stove, rent and other things, but never claimed that he had paid the premium. That afterwards the agent went to appellee and asked him what he was going to do

about the policy in question, to which he replied that he did not want it as he had no use for it. That at another time, the agent's son called on appellee and asked for the policy, that appellee stated that he, appellee, was going away but that he would get the policy out of the safe some other time and leave it so that the witness could get it, and that appellee told another witness after the fire, that he had no insurance except $2,500 on the building. Mantle, the agent, died some six months after the fire, and some five months before the present suit was instituted.

By appellee's first given instruction the jury were told that if appellee was in possession of the policy when the suit was commenced, then the law would presume that the policy was accepted by him, and that evidence would be required to overcome that presumption and before they could find that the policy was not accepted by him, they must find that this presumption had been overcome by the evidence; by the second, that if they believed from the evidence that the defendant's agent made and delivered the policy to the plaintiff, then the law would presume that the premium was paid and before they could find that it was not paid, they must find that the presumption was overcome by appellant; and by the fifth, that if they believed that the defendant's agent executed and delivered the policy to the plaintiff, then the law would presume that it was accepted by him, and that they must find it was so accepted unless the presumption has been overcome.

It is insisted that the court erred in giving the foregoing instructions for the reason that even if payment and acceptance could be presumed from the delivery of the policy, the burden was not thereby shifted to appellant, but that the obligation to establish the truth of the claim rested throughout the trial upon appellee. Such is undoubtedly the law. Traction Co. v. Mee, 218 Ill. 9; Compher v. Browning, 219 Ill. 449. Legal presumptions do not, strictly speaking, shift the

burden of proof. The only effect of the same is to create the necessity of evidence to meet the *prima facie* case thereby created, and which would otherwise prevail. We do not think, however, that the instructions referred to are in conflict with the rule invoked by counsel.

The jury were not told, as contended, that the burden of proof at any time shifted to the defendant. In our former opinion we held that upon the instruction of the policy and proofs of loss, the plaintiff made out a *prima facie* case, and that, in the absence of proof to the contrary, the presumption was that the insured accepted the policy delivered to him as a binding contract of indemnity but that such presumption was liable to be overcome by proof to the contrary. The verification did not remove such presumption. The only effect of the verification was to permit appellant to introduce evidence to overcome the presumption which it would not have been allowed to do in the absence of a verified plea.

It is further insisted that the verification of the plea of the general issue destroyed all presumption which might be indulged in the absence of such verification. Such is not the law in cases of the present character. The effect of the verification was not to remove all presumptions but to permit appellant to introduce evidence to overcome the same, which it would not have been allowed to do in the absence of a verified plea.

At common law, in cases involving policies of insurance, possession of the policy by the insured establishes a *prima facie* case of the delivery of the same as a valid and subsisting contract. Elliott on Evidence, sec. 2296; Berliner v. Ins. Co., 121 Calif. 451; Amos v. Ins. Co., 152 Fed. Rep. 192; Coffin v. Ins. Co., 127 Fed. Rep. 555; Rey v. Assurance Society, 44 N. Y. Sup. 745; Quinby v. Ins. Co., 71 Hun, 104; Westerfield v. Ins. Co., 129 Calif. 68.

The receipt and retention of the policy are circumstances tending to show an acceptance of the same

and in the absence of explanation will be received as establishing it. N. Y. Life Ins. Co. v. Easton, 69 Ill. App. 479.

The language of the present policy in connection with proof of the delivery of the same, must be held to be an acknowledgment of the receipt of the premium, and under the public policy of the state, in the absence of fraud, the company was estopped to prove, for the purpose of avoiding the policy, that the premium was not in fact paid, but as the plea of general issue had been verified, it was competent, as tending to show that appellee refused to accept the policy. Helbig v. Ins. Co., 120 Ill. App. 58.

We are therefore of opinion that the instructions complained of correctly stated the presumption arising in favor of appellee under the evidence, notwithstanding the verified plea of general issue was interposed and that the court did not err in giving the same to the jury.

We do not think the foregoing views are in conflict with those expressed in Walsh v. Marvel, 130 Ill. App. 305, cited by counsel for appellant.

It is finally urged that the judgment should be reversed for the reason that the verdict is manifestly against the weight of the evidence. The testimony of Helbig and his daughter shows that he not only accepted the policy as an executed binding contract, but that he paid the premium in cash. The fact that he retained possession of the policy and that attempts were made by the company to cancel the same, seems to corroborate the claim that it was regarded by both parties as accepted. In canceling, or in any attempt to cancel the policy, the company may be said to have thereby recognized that it was or had been in force, for, as was said in Ins. Co. v. Maguire, 51 Ill. 342: "If there was no policy in existence, how could it be canceled? The very fact of an attempt at cancellation is an admission there was a policy capable of being canceled." On the other hand, the evidence adduced by

the company tends to show that Helbig not only did not pay the premium, but that he never intended to and never did accept the policy, and that he had, prior to the fire, promised to surrender it to the agent of the company. It will be seen that the evidence as to these issues was in serious and irreconcilable conflict. It is not within the province of a court of review to set aside the finding of a jury upon a controverted question of fact, merely because, from the printed record, it appears that the evidence would better have supported a contrary conclusion. Such duty is imposed only where it clearly and manifestly appears from the record that the finding is contrary to the evidence. Although there is evidence in the case at bar which would have well warranted a contrary conclusion, we do not feel that, under the rule stated, we would be justified in disturbing the finding of the jury, which has been approved by the trial judge.

We find no errors in the rulings of the court upon the evidence or instructions which could have operated to prejudice appellant, and the judgment will be affirmed.

*Affirmed.*