## John Y. Chisholm, Trustee, Appellee, v. First National Bank of Leroy, Appellant.

1. BANKRUPTCY—*evidence admissible to show preference was unlawful.* Where a grain company used the proceeds of a sale of its elevator to pay a debt to a bank, in an action by its trustee in bankruptcy to recover such amount from the bank as an unlawful preference, evidence by farmers who had sold grain to the company that their checks had not been honored by such bank when presented after the sale is incompetent to show that the payment of the debt was an illegal preference, and does not show that the bank had knowledge of the transactions with the farmers, but such evidence is competent as against payments to the bank after the checks were presented, if such payments were not made in the usual course of business or were made for the purpose of giving the bank a preference.

2. BANKRUPTCY—*when statement by agent of preferred creditor is inadmissible.* Where a grain company sells its elevator and pays the proceeds to a bank in payment of a debt, and its trustee in bankruptcy sues the bank to recover such amount as an unlawful preference, evidence that the assistant cashier of the bank informed his brother that the company had sold its elevator has no bearing upon the issues.

3. BANKRUPTCY—*when evidence establishes insolvency.* Where a grain company sells its elevator and applies the proceeds in payment of a debt due a bank, and its trustee in bankruptcy sues the bank to recover such amount as an unlawful preference, evidence that the company had received grain in storage from farmers, had sold it, deposited the proceeds with the bank and that the farmers had not received pay for the grain, is competent as tending to show that the company was insolvent, if there is evidence that the bank had knowledge of the insolvency at the time it received its preference.

4. BANKRUPTCY—*not presumed that creditor receiving payment knew it was a preference.* In an action by a trustee in bankruptcy to recover as an unlawful preference an amount received by a bank in payment of a debt, an instruction that the law presumes that the bank had no reasonable cause to believe a preference would be created by the payment of the debt, and the jury should act on such presumption unless it is overcome by a preponderance of evidence, states the law correctly and is not covered by an instruction informing the jury what the plaintiff must prove by a preponderance of evidence but not informing the jury what the presumption of law is in such a case.

5. BANKRUPTCY—*illegal preference.* Where a grain company sells its elevator and applies the proceeds to paying a debt due a bank, the bank cannot contend that even if it knew the company was insolvent at the time of the payment it was not an illegal preference if the company was insolvent when it began doing business with the bank some months prior thereto, where the company had sustained heavy losses and the sale of the elevator was, not in the usual course of business but a sale forced by the bank.

6. WITNESSES—*when evidence of impeachment may be explained.* Where a witness is asked, on cross-examination to lay a foundation for impeaching evidence, if he had not had a certain conversation, and he denies having had it, after the impeaching witness has testified that a conversation was had but not in the language of the question, the impeached witness is entitled to testify in rebuttal as to his version of the conversation.

Appeal from the Circuit Court of McLean county; the HON. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the April term, 1912. Reversed and remanded. Opinion filed October 15, 1912. Rehearing denied December 20, 1912.

LESLIE J. OWEN and BARRY & MORRISSEY, for appellant.

LIVINGSTON & BACH, E. D. RIDDLE and WELTY, STERLING & WHITMORE, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

This is an action of *assumpsit* brought by John Y. Chisholm, trustee in bankruptcy of the Clark Grain and Elevator Company, against the First National Bank of Leroy, to recover the amount of an alleged unlawful preference under the provisions of the Bankruptcy Act. The declaration contains several counts alleging in various ways that while the Clark Grain and Elevator Company, hereinafter called the Grain Company, was insolvent and within four months prior to its being adjudicated a bankrupt, the defendant received from it a transfer of property or the payment of money to the amount of $10,000 which it applied on the indebtedness of said Grain Company and that,

at the time of the transfer or the payment of the money, defendant had reasonable cause to believe that it would thereby obtain a preference over other creditors of the same class contrary to the Bankruptcy Act. A jury returned a verdict in favor of plaintiff for $8,815 on which judgment was rendered and the defendant appeals.

The Grain Company, a corporation organized under the laws of Illinois, had been engaged, prior to November, 1910, in buying and selling grain at Argenta. On November 1, 1910, it sold its elevator at Argenta and purchased one at Leroy for $12,500 paying $6,000 in cash and giving a mortgage on the property for $6,500. It also leased another elevator at Leroy and one at Empire. It began the operation of these elevators on November 4, 1910, and on that day made a deposit of $1,000 with the defendant in a general check and deposit account, known as the Leroy account. On November 21st, it borrowed $1,000 from the defendant giving its note therefor and opened a second check and deposit account called the Empire account. The accounts of the Grain Company at the defendant bank were overdrawn much of the time. The Leroy account was continuously overdrawn from January 17th, to February 9th. On February 1, 1911, the Grain Company borrowed $5,000 from the bank for which it gave its note payable on demand. The Grain Company continued in business until March 22nd and was declared an involuntary bankrupt May 15, 1911. The Empire account was continuously overdrawn from February 23rd, to March 20th, when the overdraft in that account amounted to $1,438.59.

The Leroy account was continuously overdrawn from February 14th, the overdraft then being $5,746.68. On March 18th the overdraft was $4,027.51; it varied from February 14th, to March 20th, from $3,500 to $6,769.87. On March 20th, the Grain Company sold its elevator and a crib of corn to Simeon Crumbaugh from whom it had bought the elevator, and received

two checks, one for $6,368, the other for $2,337, which were turned over to the defendant in payment of the $5,000 note and interest and the balance $3,657.50 deposited in part payment of the overdrafts in the Leroy and Empire accounts. Other money was deposited on March 21st, reducing the overdraft to $300.25.

The questions involved in the case are (1) was the Grain Company insolvent; (2) did the defendant have reasonable cause to believe the Grain Company was insolvent; and (3) did defendant receive money from the Grain Company in payment of its debts while the defendant had reasonable cause to believe the Grain Company was insolvent within four months prior to the adjudication in bankruptcy.

It is stated in the argument for defendant: "As a matter of fact, it (the Grain Co.) was insolvent at the time it opened its account with appellant but its condition was not known to appellant until after March 20, 1911." The proof clearly shows that when the Grain Company began business at Leroy the only assets it had were the equity in the elevator and $1,385. The company at that time owed Thayer & Co. a note for $5,000 with interest from July, 1910, and had corn contracted at Argenta on which it lost $2,400. After buying the elevator the Grain Company expended $1,171 in improvements on it. The leased elevator in Leroy burned February 13, 1911, with only five hundred dollars insurance on the contents, the draft for which was received by the defendant. The loss resulting from the fire was between six and seven thousand dollars. The Grain Company sustained heavy losses on corn sold in December, 1910, and January, 1911. Clark, the president of the Grain Company in December, 1910, used $3,025 of the company's money in paying a debt of the H. C. Clark Grain Co. in Oklahoma for which the Grain Co. was in no way responsible and this was a total loss as the party for whom it was paid was not financially responsible.

Vol. CLXXVI—25

386    APPELLATE COURTS OF ILLINOIS.

Chisholm v. First National Bank of Leroy, 176 Ill. App. 382.

The owner of the leased elevator that burned, causing such a large loss to the Grain Company, was George Dooley, the vice president of the defendant. At the request of Taylor, the cashier of defendant Clark immediately after the fire borrowed $1,065.75 on a $5,000 life insurance policy on his own life, which was used in reduction of overdrafts after the bank had already taken the $5,000 and $1,000 notes from the defendant. In December, 1910, the Grain Company borrowed $2,500 from Boyd of Indianapolis, for which its note was given and the money was deposited in the bank a few days before the payment was made on the Oklahoma debt. Shortly before the sale of the elevator to Crumbaugh, the Grain Company at the demand of the defendant, that the Grain Company's indebtedness should be reduced, borrowed another sum of $2,000 from Boyd which was paid to the bank on its overdraft. For several days before the elevator was sold, the bank, through Dooley, its vice president, and Taylor, its cashier, urged that it be given security and that its indebtedness and overdrafts be paid. The Grain Company offered the bank a second mortgage on the elevator, stock in the Grain Company and insurance policies on the life of Clark, but the bank insisted that the elevator and corn be sold and the proceeds applied on the indebtedness. The bank began and conducted the negotiations, which lasted several days, for the sale of the elevator to Crumbaugh. The evidence shows that the sale was forced through by the defendant, and that the defendant urged Crumbaugh to offer $12,000 for the elevator, that a few months before he had sold for $12,500 and on which $1,171 had since been expended by the Grain Company in improvements. After the sale of the elevator and the corn was agreed upon, the parties went to Mr. Owen, an attorney, to make the conveyance. Clark testified that Owen told the parties—Taylor representing the bank, Crumbaugh, and Clark representing the Grain Company—before the deed was signed, that if there

were any other creditors the transaction would not stand, unless there was other property remaining to satisfy the other creditors, and Clark said there was no other property, and that after this statement the deed was executed and the checks drawn and credited on the indebtedness. This statement of Clark is denied by Taylor and the stenographer of the attorney —the testimony of Taylor being that Clark said the company had grain enough to pay all its debts and have nine hundred to one thousand dollars left. There is evidence also that the bank had notice that there was other indebtedness; Clark testified that he told Taylor, the cashier, on March 13th that the company owed Thayer $5,000 and Boyd $2,500. This, however, is contradicted by the cashier.

All the witnesses who testify regarding the making of the deed and the payment of the money fix the date as Monday, March 20th, and the checks and deed bear that date. The transcript of the record which contains a copy of the defendant's accounts with the Grain Company has the credit, resulting from the money received on these checks, on March 17th followed by an entry of a deposit of $980 on the 18th, and one of $1,895 on the 21st and the payment of several checks on the 18th, 20th and 21st. No explanation of this discrepancy is offered by defendant nor any showing made as to the source of the last two deposits.

The defendant claims that the court erred in permitting a number of witnesses, farmers, who had sold grain to the Grain Company and received checks, some on March 20th and others on March 21st, to testify over objection, that they held checks on the defendant issued by the Grain Company, which are unpaid, and that they had been presented for payment on the days of their respective dates, but apparently subsequent to the sale of the elevator which was on the morning of the 20th. This evidence was incompetent to show that the application of the Crumbaugh checks to the payment of the indebtedness of the Grain Company

was an illegal preference and did not tend to show that the defendant had any knowledge of transactions between the Grain Company and the farmers to whom they were issued, unless they were presented before the sale of the elevator, but they were competent as against the application of any payments applied on the Grain Company's indebtedness to the bank subsequent to their presentation which were not received in the ordinary course of business and without any intention of the Grain Company to give the defendant a preference, if any such were made. The evidence does not show from what source or under what circumstances the deposit of $1,895 on March 21st was received and made, nor whether it was before or after the grain was bought for which checks were issued on that day. Some of these checks were left at the bank on March 20th, the statement being made to the parties leaving them that they would be paid if money should be deposited that could be applied to their payment. The presentation and refusal of payment by the defendant of these checks was competent evidence against the defendant to show that the Grain Company was indebted to the parties presenting them and that the defendant had knowledge of such indebtedness if the same were presented before the deposit made on March 21st, if it be made to appear that the deposit on March 21st, was not made in the usual course of business or was made for the purpose of giving the defendant a preference and the defendant had reason to believe the Grain Company was insolvent, but it was not competent as to the application of the proceeds of the property sold Crumbaugh for the reason they were transactions subsequent to the sale of the elevator.

The assistant cashier also testified that on March 20th after the money had been received for the purchase of the elevator he telephoned to his brother asking him if he had sold his corn and telling him he would like to see him; the brother asked if the Grain Company had sold out and the assistant cashier told

him it had sold to Crumbaugh. This evidence was admitted over objection. This was the statement by an agent of the defendant simply reciting that the Grain Company had sold its elevator and it had no bearing on the issues in the case.

The court also permitted proof to be made that the Grain Company had received grain in storage from farmers, had sold it, deposited the proceeds with the defendant and that the farmers had not received pay for the grain. This evidence was competent and proper as tending to show that the Grain Company was insolvent if there was evidence to show that appellant had reason to believe the Grain Company was insolvent at the time the elevator was sold and the proceeds applied on the indebtedness. The material question was, did the defendant know or have reason to know that there were other creditors, and that the Grain Company was insolvent because of such other creditors, without evidence tending to prove such knowledge; this evidence was immaterial and it was immaterial how the indebtedness arose.

Taylor, the cashier, was asked on cross-examination to lay a foundation for impeaching evidence, if he had not said to R. C. Baldwin that Clark said to him that the Grain Company "had started with a capital of $7,500 and that it was all borrowed money and that Clark had lied to him about his financial condition." Taylor denied having had any such conversation. Baldwin over the objection of the defendant testified he did not have the conversation with Taylor in the language of the question; that he didn't say "he had lied," but he said he came there with a capital of $7,500, and it was nearly all borrowed, and that this conversation was prior to March 27th. Taylor was recalled in rebuttal to deny or explain this conversation with Baldwin. After Baldwin had testified to the conversation, Taylor should have been permitted to give his version of it.

The evidence is in direct conflict as to whether the

390    APPELLATE COURTS OF ILLINOIS.

Chisholm v. First National Bank of Leroy, 176 Ill. App. 382.

appellant knew the Grain Company was indebted to anyone except to it and on the mortgage it owed on the elevator. The evidence of the assistant cashier as to the telephone message to his brother was prejudicial before a jury in a case of this kind; the admission of this prejudicial evidence and the refusal to permit Taylor to give his version of the conversation with Baldwin require a reversal of the case.

The court refused the following instruction asked by the appellant: "You are instructed that the law presumes and it is your duty to presume, that the defendant had no reasonable cause to believe a preference would be created by the payment of the note and overdraft and you should act upon and enforce this presumption of the law, unless it has been overcome by a preponderance of the evidence." The first instruction given for the appellant told the jury what the appellee must prove by a preponderance of the evidence but did not tell the jury what the presumption of law is in such a case. The instruction announces a correct presumption of law and should have been given. Helbig v. Citizens' Ins. Co., 234 Ill. 251, aff'g 138 Ill. App. 115. Error is assigned on the giving and refusing of other instructions, but we find no error in the rulings of the court in that regard.

The appellant contends that even if the Grain Company was insolvent and the appellant knew it at the time the elevator was sold and the money applied in payment of its debts, yet this is not an illegal preference because the Grain Company was insolvent when it began doing business with appellant. We cannot agree with this contention for the reason that the Grain Company sustained very heavy losses after November 4th, and the sale of the elevator with the crib of corn was not in the usual course of business but was apparently a sale forced by the appellant; if the appellant knew of such insolvency or had reasonable ground to believe the Grain Company was insolvent, before it caused the Grain Company to sell

its assets and apply them to the payment of the debt to the bank so that the sale was made for the purpose of applying the proceeds on the appellant's debt, then the appellant obtained an illegal preference. In re Mohr Contracting Co., 157 Fed. 469; In re V. & M. Lumber Co., 182 Fed. 237; Schmidt v. Bank of Commerce, 15 N. M. 470.

The question of how the last two deposits came to be made, and if they were made in due course of business, what the rights of the parties are with reference to them has not been argued and we express no opinion concerning them, since the cause must be reversed and remanded because of the errors indicated and there may be additional evidence upon another trial. The judgment is reversed and the cause remanded.

*Reversed and remanded.*