## John Y. Chisholm, Trustee, Appellee, v. First National Bank of Leroy, Appellant.

1. BANKRUPTCY, § 23*—*when evidence sufficient to show preference.* In an action to recover the amount of an alleged unlawful preference under the provisions of the Bankruptcy Act, where the evidence did not show clearly whether the bankrupt was insolvent at the time of the preference, the question whether the defendant knew or had reasonable cause to believe that such bankrupt was insolvent and that it would receive a preference from the proceeds of the sale of an elevator and crib of corn and certain drafts was for the jury, its finding in the affirmative being supported by the evidence.

2. BANKRUPTCY, § 21*—*what constitutes preference.* Where the sale of a bankrupt's property was made to satisfy a debt of a defendant and not voluntarily, the application of the proceeds not being because of mutual debts, or a debt in the nature of a running account, the payment constituted an illegal preference.

3. APPEAL AND ERROR, § 492*—*when erroneous judgment cannot be objected to.* Error in the entry of a judgment in excess of the amount claimed in a declaration is waived when there is no objection in the lower court, since the question cannot be first raised on appeal.

4. BANKRUPTCY, § 27*—*what evidence admissible to show preference.* In an action against a bank to recover the amount of an unlawful preference, where the defendant claimed that it ceased to make payments on checks because the bankrupt began doing business with another bank, a receipt for money deposited with another bank was properly admitted when its purpose was only to show that the deposit was not general but in trust for creditors.

5. BANKRUPTCY, § 27*—*when bankrupt's schedule of debts admissible in evidence.* In an action against a bank to recover the amount of an alleged unlawful preference, the admission in evidence of the schedule of debts and creditors filed in the bankruptcy

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

court, while unnecessary was not error, the effect of the evidence being properly limited by the instructions.

6. APPEAL AND ERROR, § 1632*—*when improper remark of counsel cured.* In an action to recover the amount of an alleged unlawful preference, a question asked of an attorney as to whether he did not state that a conveyance was worthless if there were other creditors, and his negative answer, were harmless and the ruling of the court in excluding the question and answer on motion operated to remedy the error, had there been any.

Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed October 16, 1914. Rehearing denied December 2, 1914. *Certiorari* allowed by Supreme Court.

LESLIE J. OWEN and DEMANGE, GILLESPIE & DEMANGE, for appellant.

LIVINGSTON & BACH and WELTY, STERLING & WHITMORE, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

This is an action of assumpsit brought by John Y. Chisholm, trustee in bankruptcy of the Clark Grain & Elevator Company, against the First National Bank of Leroy to recover the amount of an alleged unlawful preference under the provisions of the Bankruptcy Act. The declaration contains several counts alleging in various ways that while the Clark Grain & Elevator Company, hereinafter called the Grain Company, was insolvent and within four months prior to its being adjudicated a bankrupt, the defendant received from it a transfer of property or the payment of money to the amount of $10,000, which it applied on the indebtedness of said Grain Company, and that at the time of the transfer or the payment of the money defendant had reasonable cause to believe that it would thereby obtain a preference over other creditors of the same class contrary to the Bankruptcy Act. A trial before

*See **Illinois Notes Digest**, Vols. **XI** to **XV**, and **Cumulative Quarterly**, same topic and section number.

a jury resulted in a verdict and judgment thereon in favor of the plaintiff, which on an appeal to this court was reversed and the cause remanded. *Chisholm v. First Nat. Bank of Leroy,* 176 Ill. App. 382. At the second trial a jury returned a verdict in favor of plaintiff for $10,718.50, on which judgment was rendered and the defendant again appeals.

The Grain Company, a corporation organized under the laws of Illinois, had been engaged, prior to November, 1910, in buying and selling grain at Argenta. On November 1, 1910, it sold its elevator at Argenta and purchased one at Leroy for $12,500, paying $6,000 in cash and giving a mortgage on the property for $6,500. It also leased another elevator at Leroy and one at Empire. It began the operation of these elevators on November 4, 1910, and on that day made a deposit of $1,000 with the appellant in a general check and deposit account, known as the Leroy account. On November 21st it borrowed $1,000 from the appellant, giving its note therefor, and opened a second check and deposit account called the Empire account. The accounts of the Grain Company at the appellant Bank were overdrawn much of the time. The Leroy account was continuously overdrawn from January 17th to February 9th. On February 1, 1911, the Grain Company borrowed $5,000 from appellant for which it gave its note payable on demand. The Grain Company continued in business until March 22nd, and was declared an involuntary bankrupt May 15, 1911. The Empire account was continuously overdrawn from February 23rd to March 20th, when the overdraft in that account amounted to $1,438.59.

The Leroy account was continuously overdrawn from February 14th, the overdraft then being $5,746.68. On March 18th the overdraft was $4,027.51. It varied from February 14th to March 20th from $3,500 to $6,769.87. On March 20th the Grain Company sold its elevator and a crib of corn to Simeon Crumbaugh,

from whom it had bought the elevator, and received two checks, one for $6,368, the other for $2,337, which were turned over to the defendant in payment of the $5,000 note and accumulated interest, $40, and the balance, $3,657.50, was deposited in part payment of the overdrafts in the Leroy and Empire accounts. The appellant also received two drafts amounting to $980 with waybills attached on March 20th. These drafts were applied in reduction of the overdraft. On March 21st other money was deposited by the Grain Company reducing the overdraft to $300.25.

The questions involved in the case are: (1). Was the Grain Company insolvent? (2) Did the defendant have reasonable cause to believe the Grain Company was insolvent? And (3) did defendant receive money from the Grain Company not in the regular course of business in payment of its debts while the defendant had reasonable cause to believe the Grain Company was insolvent within four months prior to the adjudication in bankruptcy?

It is stated in the argument for defendant: "As a matter of fact it (the Grain Company) was insolvent at the time it opened its account with appellant, but its condition was not known to appellant until after March 20th, 1911." The proof clearly shows that when the Grain Company began business at Leroy the only assets it had were the equity in the elevator and $1,385. The company at that time owed Thayer & Company a note for $5,000, with interest from July, 1910, and had corn contracted at Argenta on which it lost between $2,000. and $3,000 by a decline in the price of corn. The evidence tends to show that this loss occurred by a shrinkage in the price of corn after the business was begun in Leroy. After buying the elevator the Grain Company expended $1,171 in improvements on it.

On November 28, 1910, Clark borrowed $1,063.97 on some life insurance policies on his own life which was deposited to the credit of the Grain Company with

appellant. On November 30, 1910, the Grain Company borrowed $2,500 from B. A. Boyd, a grain commission man of Indianapolis, which it deposited with appellant to its credit. The leased elevator in Leroy, containing corn and oats belonging to the Grain Company of the value of over $6,000, burned February 13, 1911, with only $500 insurance on the contents, the draft for which was received by the defendant. The net loss resulting from the fire was over $5,000. The cashier of appellant was present at the fire and was then told of the amount of the insurance. The owner of the leased elevator that burned, causing such a large loss to the Grain Company, was George Dooley, the vice-president of the defendant. The Grain Company sustained heavy losses on corn sold in December, 1910, and January, 1911. Clark, the president of the Grain Company, on December 28, 1910, used $3,025 of the Company's money in paying a debt of the H. C. Clark Grain Company, a different party from the Clark Grain & Elevator Company, in Oklahoma, for which the Grain Company was in no way responsible, and this was a total loss, as the party for whom it was paid was not financially responsible.

Shortly before the sale of the Elevator to Crumbaugh, the Grain Company at the demand of the defendant that the Grain Company's indebtedness should be reduced, borrowed another sum of $2,000 from Boyd which was paid to the Bank on its overdraft. For several days before the elevator was sold, the Bank president and Taylor, its cashier, urged that it be given security and that its indebtedness and overdraft be paid. Cassley, the secretary and bookkeeper of the Grain Company, testified that the appellant was so anxious to have its overdraft paid that shortly before the sale of the elevator the cashier of the Bank said the account was worrying him and that he would give Cassley $100 to get the account transferred to some other bank, and that Cassley said he would do all he

could to transfer the account and that he did talk with Clark about it. The Grain Company offered the Bank a second mortgage on the elevator, stock in the Grain Company and insurance policies on the life of Clark, but the Bank insisted the elevator and the corn in a certain crib be sold and the proceeds applied on the indebtedness. The Bank began and conducted the negotiations, which lasted several days, for the sale of the elevator and corn to Crumbaugh. The evidence shows that the sale was forced through by the appellant, and that appellant urged Crumbaugh to offer $12,000 for the elevator, that a few months before he had sold for $12,500, and on which $1,171 had since been expended by the Grain Company in improvements. After the sale to Crumbaugh of the elevator for $12,000, and the corn for $2,337.50, had been agreed upon on Sunday, March 19th, the parties early Monday morning went to Mr. Owen, an attorney at Leroy, to make the conveyances. Clark testified that Owen told the parties—Taylor representing the Bank, Crumbaugh and Clerk representing the Grain Company—before the deed was signed that if there were any other creditors the transaction would not stand, unless there was other property remaining to satisfy the other creditors, and Clark said there was no other property, and that after this statement the deed was executed and the checks drawn, the $5,000 note paid and the balance credited on the indebtedness. The deed of the elevator and a bill of sale of the corn were recorded in the recorder's office in Bloomington at 9:50 A. M. Monday, March 20th. The checks were drawn by the cashier of the Bank, signed by Crumbaugh and applied on the indebtedness without being intrusted to the custody or possession of the Grain Company. The statement of Clark that the attorney said the transaction would not stand is denied by Taylor, the stenographer of the attorney, and the attorney, the testimony of Taylor being that Clark said

the Company had grain enough to pay all its debts and have $900 to $1,000 left. There is evidence that the appellant had notice that there was other indebtedness and there were various checks outstanding that the appellant had refused to honor. Clark testified that he told Taylor, the cashier, on March 13th that the Company owed Thayer $5,000 and Boyd $2,500. This, however, is contradicted by the cashier.

It is not clear from the evidence whether the Grain Company was solvent or insolvent when it began business in Leroy. The proof tends to show that the Grain Company had contracted for 22,000 bushels of corn at Argenta, and that the price of corn declined about ten cents a bushel in November and December, and that there was a loss on the Argenta corn of over $2,000 when it was delivered in December. If the loss on the Argenta corn occurred after the beginning of the business at Leroy, then the Grain Company was not insolvent until after it had begun business at Leroy, as the $3,025 paid on an Oklahoma debt of Clark's was not the debt of the Grain Company but was a misappropriation by Clark of the funds of that Company. When the Grain Company was declared bankrupt, and it does not appear to have done any business after March 21st, it was indebted to the amount of $17,864.63, and had assets of not to exceed $5,244.85.

The verdict was for the amount of the proceeds of the sale of the elevator and crib of corn to Crumbaugh and the $980 draft with interest thereon. It was a question for the jury, and the jury was justified in finding from the evidence that on March 20th, when the proceeds of the sale of the elevator and crib of corn to Crumbaugh and the delivery of the drafts for $980 were obtained, that appellant knew or had reasonable cause to believe that the Grain Company was insolvent, and that in applying the proceeds of the sale of the elevator and crib of corn and drafts appellant would

receive a larger percentage of its debt than other creditors.

It is also contended that the Grain Company was insolvent all the time it did business in Leroy and that the transactions between the appellant and the Grain Company increased the assets of the Grain Company, that the net result of the business was beneficial to the Grain Company. The facts show that the assets were very much diminished and the debts very much increased while the business was run in Leroy. Appellant only claims that the deficiency of the Grain Company's assets to pay its debts was $1,000 in November, 1910, while when it was declared a bankrupt the deficiency was about $12,000.

It is also insisted that the appellant had the right to apply the deposits to the debts of the Grain Company and that the application, as made, did not constitute an illegal preference. The debts were not mutual debts, or in the nature of a running account, but the sale of the elevator, the crib of corn and the receipt of the two drafts were made for the purpose of applying such proceeds on the Grain Company's debt at the insistent demand of appellant and not voluntarily by the Grain Company. A payment of debts so obtained constitutes an illegal preference. *In re Mohr Contracting Co.*, 157 Fed. 469; *In re V. & M. Lumber Co.*, 182 Fed. 237; *Ernst v. Mechanics' & Metals Nat. Bank*, 201 Fed. 664, 120 C. C. A. 92.

It is also contended that the trial court erred in rendering judgment on the verdict for $10,718.50 when the damages claimed in the declaration are $10,000. The appellant has waived all errors in that regard by not having raised any question concerning it in the trial court. That question may not be first raised in an Appellate Court. *Wheatley, Buck & Co. v. Chicago Trust & Savings Bank*, 167 Ill. 480; *Leathe v. Thomas*, 218 Ill. 246.

On March 20, 1911, at the time the elevator and crib of corn were sold, the Grain Company was shelling

and shipping other corn. Four cars had been loaded and billed for shipment. The bookkeeper testified that immediately after the proceeds of the elevator and crib of corn had been applied on the indebtedness, the cashier of appellant went to the grain office and insisted that the bills of lading and drafts on the four cars should be turned over to appellant. The bookkeeper testified that these cars were to be shipped to Boyd on the money he had advanced to the Grain Company, but that the cashier demanded that they be turned over to appellant, and that on his demand two of the drafts, amounting to $980, and the accompanying bills of lading were turned over to appellant and credited on the overdraft. On March 21st the Grain Company made a deposit of $1,895, which was applied by the appellant on the overdraft, leaving an overdraft of $300.25, when the appellant ceased to pay any further checks of the Grain Company.

It is assigned for error that the court erred in the admission and rejection of evidence. It is argued that it was error to admit proof of a receipt for money deposited with another bank by the Grain Company after the receipt of the sums by appellant which appellee claims were preferences. Appellant claimed that it ceased to pay checks after it received the alleged preferences because the Grain Company had begun doing business with another bank. The receipt was admitted for the purpose only of showing that the deposit was not a general deposit but was in trust for the creditors. It is also contended that it was error to admit in evidence the schedule of debts and creditors filed in the bankruptcy court because insolvency was admitted. While such evidence was not necessary, it was not necessarily erroneous, and the court instructed the jury at the request of appellant to disregard any evidence proving or tending to prove the existence of any indebtedness of the Grain Company which arose after making the deposits in question, and that the

bankruptcy schedule is not to be regarded in so far as it proves or tends to prove any debts of the Grain Company which arose after making the deposits in question.

It is further contended that a question put to the attorney, who drew the conveyances of March 20th, whether he did not state at a meeting of the creditors five days after the making of the conveyances that if the Grain Company had any other creditors the conveyance was not worth the paper it was written on. The attorney answered that he did not, and on motion of appellant the question and answer were excluded. The question and answer were harmless, and the ruling of the court remedied any error there might have been if the answer had been other than it was. Complaint is made concerning some other rulings on evidence, but on examination we do not find any reversible error.

Error is also assigned on the giving and modifying instructions, but we find the jury were fully and properly instructed.

Finding no reversible error in the case, the judgment is affirmed.

*Affirmed.*